COULTER and others, Trustees, Respondents, vs. DEPARTMENT OF TAXATION, Appellant.*

*March 8—April 3, 1951.*

* Motion for rehearing denied, with $25 costs, on June 15, 1951.

For the appellant there was a brief by the *Attorney General,* and *Harold H. Persons* and *E. Weston Wood,* assistant attorneys general, and oral argument by *Mr. Wood.*

For the respondents there were briefs by *Bradford, Derber & Gabert* of Appleton, and oral argument by *Albert S. Bradford.*

GEHL, J. Mr. Peabody died in 1909 leaving a will. The will sets up a trust out of the income of which testator's daughter, Emma Peabody Harper, who is still living, is to receive $6,000 annually during her life. Then follow directions for payments out of the residue of the estate, each being contingent upon there being funds remaining after payment of the preceding bequests, as follows:

Article II: $1,000 to the Appleton cemetery association, in trust for perpetual care of decedent's grave. (Annually $50 as income on $1,000 has been paid.)

Article IV: $30 monthly for ten years to Mrs. Richmond or her two daughters. (This amount has been paid, and although Mrs. Richmond died prior to 1946, her heirs were still living in 1946.)

Article V: $30 monthly for ten years to Mrs. Castle. (This amount has been paid. She died in 1928.)

Article VI: (1) $50,000 for the establishment, endowment, and maintenance of an Old Ladies Home to be incorporated by the trustees, open to indigent elderly women residing in Outagamie county and in cities of Neenah and Menasha, provided that it be a model institution of its kind, that the building and complete fittings cost no more than $25,000, that the site be contributed by the city of Appleton or the citizens of Appleton and neighboring cities, and that the grounds be conveniently accessible by streetcar line.

(2) Not less than $25,000 and not exceeding $50,000, to such Old Ladies Home, as a trust fund, the income to be used to establish and maintain a bureau of visiting nurses.

(3) Such sums as trustees think proper to needy persons who have been employed by decedent or the Pettibone-Peabody Company, but not exceeding $10,000 in all.

(4) $5,000 to Mrs. Richmond or her two daughters, if she be then dead, and $5,000 to Mrs. Castle.

(5) $25,000 to endow an Appleton Young Men's Christian Association provided an additional $25,000 is raised within two years after Mrs. Harper's death for the erection of a building for said Young Men's Christian Association.

(6) $5,000 to Lawrence University, Appleton, Wisconsin, for improving the grounds, and $25,000 to it to build and maintain a girls' infirmary, not to exceed $15,000 thereof to be used in erecting a modern up-to-date structure, entirely separate and apart from other buildings.

(7) $50,000 to a parkway association, if such an organization is formed, to build a park and drive along a specified section of the Fox river, upon the express limitation that the city of Appleton or the association first provides a permanent endowment of at least $1,200 annually for maintenance thereof.

(8) $2,500 to the public schools of Appleton for landscaping.

(9) Any residue remaining after all of the foregoing to be distributed *pro rata* among the beneficiaries already provided for in proportion to the sums already paid them.

The board found that during the year 1946 the trustees received as net income from the assets of the estate the sum of $131,373.04 out of which they paid to Emma Harper, pursuant to the provisions of the will, $6,000; that the balance, $125,373.04, was retained by the trustees, and that no part of the balance was *permanently set aside* to be used exclusively by or for the beneficiaries named in the will. It concluded that the balance should be assessed to the trustees as income.

Respondents contend that the bequests contained in article VI (1), (2), (3), (5), (6), (7), and (8) of the will are

to agencies designated in sec. 71.08 (9), Stats., that they were during the year 1946, pursuant to the terms of the will, permanently set aside to be used exclusively for such agencies, and are therefore exempt from the tax imposed upon trustees by the provisions of sec. 71.08 (8).

Sec. 71.08, Stats., imposes a tax upon incomes received by fiduciaries. Sub. (9) provides:

". . . There shall be exempt from such taxation any part of the gross income, without limitation, which pursuant to the terms of the will, deed, or other trust instrument creating the trust, is during the taxable year permanently set aside to be used exclusively by or for the state of Wisconsin or any city, village, town, county, or school district therein or any agency of any of them or any corporation, community chest fund, foundation, or association operating within this state, organized and operated exclusively for religious, charitable, scientific, or educational purposes or for the prevention of cruelty to children or animals, no part of the net income of which inures to the benefit of any private stockholder or individual. Such exemption shall be operative retroactively except in those instances in which an assessment has become final and conclusive under the provisions of chapter 71."

The books of the trustees do not indicate that the trustees ever treated any of the income as having been manually or physically set aside for the beneficiaries generally or for any of them specifically. It would make no difference if they had, for it is important to note that the statutory exemption applies to income "which *pursuant to the terms of the will . . .* is during the . . . year permanently set aside. . . ." The will contains no provision requiring that the trustees set aside by any physical act any part of the income for any purpose or for the benefit of any of the named beneficiaries. The fact that they do or do not do so has not been considered an important element by the federal courts which have been called upon to construe a similar federal provision imposing a tax upon the income of fiduciaries and a like exemption. *Bowers v. Slocum* (8th Cir.), 20 Fed. (2d) 350.

The federal act imposing a tax upon the income of fiduciaries, 26 U. S. Code (1940 ed.), sec. 162, contains provision for exemption similar to that contained in sec. 71.08 (9), Wis. Stats. It reads:

"(a) There shall be allowed as a deduction . . . any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes. . . ."

It will be observed that the federal act, as does our statute, exempts income "which pursuant to the terms of the will . . . is during the taxable year paid or permanently set aside" for the entities named. The former was upon the books and construed by the United States supreme court some considerable time before the adoption of the latter by ch. 236, Laws of 1947. In construing the state statute we may properly resort to the decisions of the United States court which construe the federal act so similar in import. *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595; 50 Am. Jur., Statutes, p. 315, sec. 323. Such construction is entitled to great weight.

The federal court has applied the rule that the deduction will not be permitted unless it can be readily ascertained what amount will ultimately reach the type of institutions mentioned in the statute. *Ithaca Trust Co. v. United States,* 279 U. S. 151, 49 Sup. Ct. 291, 73 L. Ed. 647; *Merchants National Bank v. Commissioner,* 320 U. S. 256, 64 Sup. Ct. 108, 88 L. Ed. 35. We agree with the reasoning of the United States court. The trustees contend that by allocating the income on a percentage basis the amount which each of the institutions will receive is determinable, that 97.75281 per cent of the undistributed income has been permanently set aside for the use of the institutions. Their contention fails to take into account the fact that there exist certain con-

tingencies and possibilities which may affect the various amounts to be received.

It cannot be determined how long Mrs. Harper will live and continue to receive $6,000 annually.

The bequest of $50,000 for the establishment and maintenance of an Old Ladies Home and the further sum of $25,000 for construction is conditioned upon the contribution by the city of a building site with no certainty that the city will ever make such contribution.

It is left to the discretion of the trustees to provide for needy employees of the Pettibone-Peabody Company in a sum not exceeding $10,000; there is nothing to indicate what portion of that sum will be paid by the trustees.

The bequest of $25,000 to endow an Appleton Young Men's Christian Association will fail unless an additional $25,000 for the erection of a building for the Young Men's Christian Association is raised.

The bequest of $50,000 to a parkway association, if such an organization is formed, to build a park and drive along the Fox river, will fail unless the city of Appleton will provide a permanent endowment of at least $1,200 annually for its maintenance; certainly there can be no assurance that the city will make such appropriation. The amount of the residue to be distributed under the provisions of article VI (9) may be substantially affected by failure of some of the specific bequests.

Finally, not only are some of the bequests contingent and made so by the provisions referring to them specifically, but each is contingent upon there being sufficient to pay the bequests made in preceding provisions of the will. Each of the provisions opens with the expression "if, after complying with the directions above set forth, there still remains property, etc.," or similar language.

"Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some

readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." *Merchants National Bank v. Commissioner, supra* (p. 261).

Counsel for respondents contend that the income realized during 1946 from capital gains may not be appropriated by the trustees to payment of the annuity provided for Mrs. Harper, that, therefore, it belongs to the other beneficiaries, and, if we understand their contention, that such income and the other property held by the trustees will provide sufficient to pay all the other legacies. Conceding that, there are, however, other contingencies to which we have called attention, and until those contingencies are resolved it cannot be ascertained what amounts will ultimately reach the respective institutions mentioned in the will.

The bequests do not have a presently ascertainable value and do not qualify for the exemption.

A statute exempting property from the taxation is to be strictly construed in favor of the state. *Aberg v. Moe,* 198 Wis. 349, 224 N. W. 132, 226 N. W. 301.

*By the Court.*—Judgment reversed with directions to enter judgment affirming the decision and order of the board of tax appeals.