ESTATE OF POMPEO M. MARESI, MARJORIE D. MARESI, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6783. Promulgated March 26, 1946.

*Murray F. Johnson, Esq.,* for the petitioner.
*C. C. Holmes, Esq.,* for the respondent.

584

## OPINION.

Opper, *Judge*: It is now well settled that a separation agreement fixing the scope of the husband's obligation of support and incorporated in a decree of divorce furnishes a foundation for deduction from the husband's gross estate of amounts paid accordingly. E. g., *Edythe C. Young, Executrix*, 39 B. T. A. 230; *Estate of Silas B. Mason*, 43 B. T. A. 813; *Fleming* v. *Yoke* (Dist. Ct., N. Dist. W. Va.), 53 Fed. Supp. 552; affirmed without opinion (C. C. A., 4th Cir.), 145 Fed. (2d) 472. So much respondent concedes, while expressing his disagreement with the conclusion reached. No reason is advanced, however, to impair its soundness nor the correctness of the cases already decided. Upon their authority the first question must be answered in petitioner's favor.

The only remaining issue is the amount of the deduction. It is evident that there would be no problem if the payments for which the estate is liable were to continue during the life of decedent's divorced wife. The difficulty is that they are to cease upon her remarriage. This leads to the not unnatural contention on the part of respondent that such a contingency is too tenuous to be measurable and, accordingly, that no deduction whatever is permissible. See *Robinette* v. *Helvering*, 318 U. S. 184.

Petitioner introduced in evidence exhibits and the testimony of a qualified actuary purporting to show that there was in existence an experience table dealing with the probabilities of remarriage of widows of various ages, based on the records of workmen's compensation insurance organizations. The figures are said to be applicable throughout the United States and to all levels of the social and economic community. From this, combined with a mortality table, it is possible, of course, to extract a figure for the supposed present value of the claim.

Although *Robinette* v. *Helvering*, *supra*, did in fact dismiss as too speculative for purposes of computation a contingency based upon marriage and the birth of issue, that case rested in part on the authority of *Humes* v. *United States*, 276 U. S. 487, and in part upon the fact that "petitioner does not refer us to any recognized method by which it would be possible to determine the value of such a contingent

reversionary remainder." As to the first basis, in *Commissioner* v. *State Street Trust* (C. C. A., 1st Cir.), 128 Fed. (2d) 618, decided long after the *Humes* case, a determination of the Board of Tax Appeals (*Estate of Francis Browne Grinnell*, 44 B. T. A. 1286) was modified and the case remanded with the statement:

In determining the amount of the deduction to which the taxpayer is entitled, it does not appear whether the Board took into account the contingency that the widow might remarry * * * we are of the opinion that the probability of remarriage is a factor which should be considered in determining the present value * * * *Brotherhood* v. *Pinkston*, 293 U. S. 96, 101 * * *

And, of course, it can not be said here as in the *Robinette* case that petitioner has referred us to no method for determining the value of the interest in question. Although it is true that a marriage table was offered in the *Humes* case, it appeared to relate solely to experience among women in the Scotch peerage, while the table proffered here is based upon American statistics.

The figures presently relied upon may leave much to be desired in the way of soundness and accuracy.[1] It does not appear that any insurance computations for reserve purposes, premium rates, or other action by insurers or actuaries has been predicated upon them or that they have ever before been employed in litigation. Cf. *Humes* v. *United States, supra.* It is also true that marriage, as distinguished from death, is at least generally a result of the participant's volition; and that the circumstances of an individual case, rather than the laws of probability, will shape the result in any given situation.

Nevertheless, the claim is an undoubted liability of the estate and one which it will be under a continuing obligation to meet. It is, as we have already noted, the type of indebtedness for which under the decided cases petitioner is entitled to a deduction. The practice is to apply mortality tables without requiring proof of the physical condition of the subject of the specific inquiry. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151; Estate Tax Regulations No. 105, sec. 81.10. And such facts, as we know, would, if anything, logically operate to decrease the probabilities of remarriage, as for example the circumstance that the divorced wife had not remarried during the eight years between the divorce and decedent's death, and her prospective loss of the annuity in the event of remarriage.

Respondent offers no more acceptable method for computing value. The contingency is not so uncertain as in the *Robinette* case, nor is the evidentiary foundation as speculative as was that in *Humes* v.

---

[1] E. g., since the number of cases remaining "after the sixth year of widowhood was too small, to yield reliable results, the calculations were not carried beyond that point" and "At some future date when more experience becomes available it may be desirable to introduce added refinements which are not practical at the present time." 19 Proceedings of the Casualty Actuarial Society (May 26, 1933), pp. 291, 298.

*United States, supra.* Although the problem is difficuic at best, we conclude, on the authority of the *State Street Trust* case, that a deduction on account of the liability in question, taking into consideration the probabilities of remarriage, should be allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARNOLD, *J.*, dissents.

