ESTATE OF CHARLES A. BROOKS, DECEASED, PEOPLES FIRST NATIONAL BANK & TRUST CO., ET AL., EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55269. Filed November 16, 1956.

*Mahlon E. Lewis, Esq.*, for the petitioners.
*George J. Rabil, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* The problem here arises because Pennsylvania's inheritance tax does not coincide with that imposed under Federal statutes. The Federal estate tax is payable in one sum computed on conditions as they existed at decedent's death, *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, while in Pennsylvania a part of the tax may be postponed to await the final outcome of decedent's disposition.

This decedent left one trust for his wife's life with powers of invasion and appointment and certain remainders over in default of their exercise. This trust was determined by respondent to be qualified for the marital deduction, has been so treated in his determination, and creates no issue here. Decedent left a second trust, the proceeds of which were to go to charity. The controversy exists because under the express terms of the will [1] this second or residuary trust must stand the cost of any Pennsylvania inheritance tax levied on the first trust; and because that result will not be known until the life tenant, decedent's widow, dies and it becomes apparent whether and in what manner she has exercised her powers. Under Pennsylvania law the tax on this future disposition is postponed but, nevertheless, payable when the ultimate facts are available. Pa. Stat. Ann. tit. 72, sec. 2304 (Purdon) ; see *In re Heberton's Estate,* 351 Pa. 564, 41 A. 2d 654.

The question reduces to whether under such cases as *Ithaca Trust Co.* v. *United States, supra,* the probabilities of devolution of the entire second trust to charity are so great that no account need be taken of the possibility that the charities will not get the entire fund; or whether, as in *Commissioner* v. *Sternberger's Estate,* 348 U. S. 189, and *Robinette* v. *Helvering,* 318 U. S. 184, there is no practical method of computing the actuarial chances of ultimate devolution, and, as a consequence, no reliable certainty of complete exemption upon which a charitable deduction for the entire second trust may be justified.

We think the facts bring this proceeding more nearly into the scope of the *Sternberger's Estate* than of the *Ithaca Trust* situation. Here the widow's circumstances are similar to those in *Ithaca Trust* but the

---

[1] Petitioner, presumably because it intends to honor the words employed in the will, makes no contention that if any additional taxes are ultimately payable they will not be governed by the language of the second trust that "all estate, legacy, inheritance and succession taxes payable by reason of my death shall be paid out of *and deducted from"* (emphasis added) the charitable trust and that "no such taxes or any part thereof shall be paid by any other person whomsoever by way of reimbursement, apportionment, proration, or otherwise" and we accordingly do not reach the question of what the obligation of the executors might be under State law were the issue to be litigated. See 37 A. L. R. 2d 7.

likelihood that she will find it unnecessary to exhaust the principal eliminates one of the possibilities under which no tax on the first trust would ultimately be due. If she exercises her power of appointment over that trust in favor of collateral heirs, an additional tax will be payable. She may either consume the corpus in her lifetime and thereby place it out of her power to make any appointment; or she may appoint to a charity which is exempt under Pennsylvania law (of which, in this case, only one is mentioned). That she will in her lifetime withdraw all of the principal can certainly not be taken for granted even if the reverse does not probably follow from the size of the fund and her financial condition. And whether she will appoint the first trust to an exempt charity is the merest guess on this record. Even if there were an equal chance that she would do so, the amount in controversy would be exactly described by the language that "it is not certain that the charity will take 50% of the corpus; only that it has a 50–50 chance of getting all or nothing." *Newton Trust Co.* v. *Commissioner*, 160 F. 2d 175, 181. See *Commissioner* v. *Sternberger's Estate, supra.*

Petitioners [on brief] submit that the only circumstances under which the contingent Pennsylvania tax can be payable are: (1) that the widow permits the residue of that trust to go in default of appointment; or (2) if she appoints to nonexempt organizations or to collaterals of [the decedent] * * *

\* \* \* \* \* \* \*

If Mrs. Brooks appoints to others than charities, then the tax will be due and she *may* also appoint the necessary amount to the Commonwealth of Pennsylvania so as to relieve any potential charge against Trust B, however remote it may be. [Emphasis added.]

It is thus apparently conceded that in a situation not really as remote as petitioner insists, some additional State inheritance tax would be payable. The eventuality is not so remote because the decedent has no relatives left in the 2 per cent class. The widow's only appointment to individuals would have to be to "collaterals." And even the "charities" available are under Pennsylvania law not necessarily exempt from its inheritance tax.

As to the suggestion that the widow "may" appoint an amount to pay the tax, there are two difficulties. First, no one can say what she will do. But second, even if she does pay the tax, the charitable trust will be made whole by her, not under decedent's will. See *Estate of Herman Hohensee, Sr.,* 25 T. C. 1258.

There being no reasonable certainty demonstrated by the facts shown here that no Pennsylvania tax will have to be deducted from the charitable trust, we think respondent's determination must be sustained.

What we have said applies to the amount of deficiency as determined. By amendment to his pleadings, respondent has requested an increased

deficiency based upon a more technical computation of the tax payable. It must be clear from what we have said that the reason that part of the charitable deduction eliminated in the deficiency notice is now being disallowed is that on this record petitioner has not convinced us that the larger amount will actually be received and retained by the charities.[2] "* * * in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." *Merchants Bank* v. *Commissioner*, 320 U. S. 256. As to the increased deficiency, not only are the same burdens present but in his calculation of the increased deficiency respondent has concededly "recomputed the amount of taxes payable out of Trust B by assuming that Trust A will remain the same until the death of the decedent's widow." Of all these facts there is, of course, no more reliable proof than with respect to the first branch of the case. Where, accordingly, the burden is upon respondent, as in the event of his application for an increased deficiency, Rule 32, Tax Court Rules of Practice, the opposite conclusion must be reached, and because of his failure of proof, the additional deficiency must be denied.

*Decision will be entered for the respondent in accordance with the deficiency notice.*

---

[2] So much is, in effect, conceded by respondent when he says on the first branch of the case "It is incumbent upon the petitioner to show that the charity will actually receive a fixed and ascertainable amount in order to be entitled to the charitable deduction * * *."