ESTATE OF LOUIS A. REITMEISTER, Deceased, MAC MERMELL, Personal Representative, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Reitmeister v. Commissioner
Docket No. 6043-79.
United States Tax Court
T.C. Memo 1982-184; 1982 Tax Ct. Memo LEXIS 560; 43 T.C.M. (CCH) 1029; T.C.M. (RIA) 82184; April 12, 1982. *560 The will of decedent, who died in 1975, created two trusts, one for the benefit of his sister and one for the benefit of his brother. Specified amounts out of income were to be paid to the individual beneficiaries during their lives with remainders over to a charitable foundation. The trustees were authorized to invade corpus of the trusts if in the uncontrolled discretion of the executor-trustees the income of the trust was not "sufficient to meet unusual or other unforeseen circumstances and expenses or extraordinary needs and expenses arising out of an emergency due to illness or other unforeseen circumstances" of the individual beneficiaries. Held, the remainder interests, under the will as written, did not qualify for deduction as charitable bequests under sec. 2055(e)(2), I.R.C. 1954. Held,further,sec. 2055(e)(3) does not permit reformation of the will after decedent's death to make the trusts conform to sec. 2055(e)(2) unless the charitable bequests were deductible under pre-1969 law. Held,further, the values of the remainder interests were not readily ascertainable at the time of decedent's death and hence were not deductible as charitable bequests for estate tax purposes. *561 Mac Mermell, pro se. David R. Smith, for the respondent. DRENNEN
MEMORANDUM FINDING OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $ 76,552 in the estate tax of the estate of Louis A. Reitmeister. After concessions by petitioner, the sole issue is whether petitioner is entitled to a deduction under section 2055(a)[1] for bequests of the remainder interests in two separate testamentary trusts established by the will of the decedent. Most of the facts have been stipulated and are found accordingly. The stipulation of fact and exhibits attached thereto are incorporated herein by reference. Louis A. Reitmeister (hereinafter the decedent) died testate on August 20, 1975, in Manhasset, N.Y., at the age of 72. The executor of his estate, Max Mermell (hereinafter the executor) filed a Federal estate tax return on May 20, 1976, with the Internal Revenue Service, Jacksonville, Fla. At the time of filing the petition herein, the executor maintained *562 his principal place of business in Coral Gables, Fla. The decedent executed his "Last Will and Testament" on March 28, 1975. This will had been prepared by the decedent without the advice or counsel of an attorney. Pursuant to this will, after numerous individual bequests, decedent bequeathed 35 percent of his residuary estate to his sister, Ida Greenstein (hereinafter Ida), in trust for her life, with the remainder to go to the Louis Aaron Reitmeister Foundation (hereinafter the foundation), a charitable organization qualifying under section 501(c)(3) and 2055(a)(2). The will provided that Ida was to be paid $ 10,000 immediately after the decedent's death, and that she was to be paid an annual income payment from the trust of $ 7,500. If the annual income from the trust was less than $ 7,500, then the balance was to be paid out of the trust corpus. The will bequeathed 25 percent of the decedent's residuary estate to his brother, Morris G. Reitmeister (hereinafter Morris) in trust for his life, with the remainder to go to the foundation. The will provided that Morris was to be paid $ 10,000 immediately after the decedent's death, and that he was to be paid an annual income payment *563 from the trust of $ 5,000. If the annual income from the trust was less than $ 5,000, then the balance was to be paid out of the trust corpus. The remaining 40 percent of the decedent's residuary estate was bequeathed to trustees for the benefit of the foundation. In connection with the bequests made to Ida and to Morris, the Thirty-second and Thirty-fifth clauses of his will provided that-- THIRTY-SECOND: If, in the judgment of my Executor(s) the installments of income and of principal herein provided under the Trusts for my sister, Ida, and my brother, Morris, to be paid to my sister and brother, shall not be sufficient to meet unusual or other unforeseen circumstances and expenses or extraordinary needs and expenses arising out of an emergency due to illness or other unforeseen circumstances, then and in such event, my Executor(s) are authorized, in their uncontrollable discretion, to pay to my sister and brother or to both, as the case may be, from income and principal hereinabove provided for, so much of the principal of the respective Trusts herein mentioned as my said Executor(s) may deem suitable and wise and, to the extent that such payments are made out of the principal *564 of said Trust, the Trusts are reduced. THIRTY-FIFTH: Should any of the provisions of the Trusts of this Will fail, or be held to be ineffectual or invalid for any reason, it is my wish that no other provisions of my Will shall be invalidated, impaired, or affected thereby, but that this Will shall be construed as if such invalid provisions or directions had not been herein contained. The estate tax return for decedent's estate claimed a charitable deduction for a bequest to the foundation in the amount of $ 384,772. The estate tax return was audited by Harry Berkowitz, an estate tax examiner for the Internal Revenue Service. He advised the executor that certain modifications had to be made in the testamentary trust provisions of the decedent's will in order for the remainder interests passing to the foundation to qualify for deduction as charitable bequests pursuant to section 2055(a). In response to this advice, the executor prepared a proposed "Order" to be submitted to the Circuit Court of Plam Beach County, Probate Division (hereinafter the Probate Court). The order was intended to reform the testamentary trust provisions of the will to conform with one of the specified trust *565 forms required by section 2055(e)(2)(A). The executor sent a copy of this proposed "Order" to Berkowitz for his review on November 29, 1977. On December 5, 1977, the executor was advised by the Internal Revenue Service that the proposed changes would be sufficient to satisfy the requirements of section 2055(e)(2)(A). The proposed "Order" was signed on December 13, 1977, by Judge Hugh MacMillan of the Probate Court. Pursuant to this order, the testamentary trusts were modified to provide that, with respect to Ida, the annual income payment was to be "the greater of Seven Thousand Five Hundred ($ 7,500.00) Dollars per annum or Five (5%) Percent of the initial net fair market value of the assets placed in trust." With regard to Morris, the annual income payment was modified to be "the greater of Five Thousand ($ 5,000.00) Dollars per annum or Five (5%) Percent of the initial net fair market value of the assets placed in trust."[2]
Sometime thereafter, Berkowitz was advised by his group supervisor that due to the provisions in clause Thirty-Second of the decedent's will, the reformation *566 of the will to meet the requirements of section 2055(e)(2)(A), would not be effective for estate tax purposes. Berkowitz conveyed this position to the executor. In response to this, the executor, with the consent of Ida and Morris, presented an "Amended Order" to the Probate Court for its approval. The amended order provided, interalia, that-- It is the intention of this order of reformation that the trusts established in the above described will in favor of Ida Greenstein and Morris G. Reitmeister qualify as a Charitable Remainder Annuity Trusts (sic) in the provisions of Sec. 664 of the Internal Revenue Code, and no provision of this will, including but not limited to paragraph THIRTY-SECOND which would prevent these trusts from so qualifying shall so apply. The Probate Court signed the order on January 11, 1978, thereby amending the order of December 13, 1977. Respondent disallowed $ 220,602.16 of the $ 384,772 deduction claimed on the estate tax return for charitable contributions made to the foundation, which represents the amount deducted by petitioner attributable to the remainder interest in the two testamentary trusts bequeathed to the foundation. OPINION The issue for *567 decision is whether petitioner is entitled to a deduction under section 2055(a)[3] *568 for the value of the remainder interests in two testamentary trusts bequeathed to the foundation. Respondent claims that the remainder interests in the two trusts bequeathed to the foundation did not conform to the requirements of section 2055(e)(2)(A) at the time of the decedent's death. Further, he claims that the remainder interests so bequeathed did not qualify for a charitable deduction under pre-1969 law and therefore could not be reformed pursuant to section 2055(e)(3) to comply with the provisions added by the Tax Reform Act of 1969. Respondent therefore contends that the action taken by the Probate Court, which he claims to have been a reformation of the will, was ineffective to qualify the remainder interests passing to the foundation for charitable deduction. For the reasons stated herein, we agree with respondent. Section 2055(a) provides a deduction for charitable bequests in determining the value of the taxable estate. However, in the case of a split interest trust, a bequest of the remainder interest must satisfy two requirements before a deduction will be allowed. First, section 2055(a) sets out to whom the bequest must be made in order to qualify for a deduction. Specifically, section 2055(a)(2) *569 provides that a proper beneficiary of an otherwise qualified bequest is "any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes." There is no dispute that the foundation meets this requirement. Second, section 2055(e)(2)(A)[4] *570 added by the Tax Reform Act of 1969 (hereinafter TRA), Pub.L. 91-172, sec. 201(a)(1), 83 Stat. 560, provides that the remainder interest must be in a trust which is a charitable remainder annuity trust, or in some other specified trust form not relevant here. [5] Petitioner claims that the testamentary trusts qualified under section 2055(e)(2)(A) as charitable remainder annuity trusts at the time of the decedent's death. He maintains that the action taken by the Probate Court constituted judicial construction of ambiguous terms in the will. The court, he argues, determined that it had been the decedent's intent to pay the income beneficiaries of those trusts an amount which was not less than 5 percent of the initial net fair market value of the assets placed in each trust, and that any provisions of the will which would disqualify the charitable *571 remainder interests for deduction be invalidated. [6] Conversely, respondent maintains that action taken by the Probate Court was only the reformation of the terms of the will made at the behest of petitioner alone. Therefore, he claims that the correct inquiry is whether the charitable remainder interests, prior to any action taken by the Probate Court, would have qualified for deduction under pre-1969 law. We agree with respondent. The only evidence presented as to action taken by the Probate Court was the Order *572 and Amended Order issued by such court in response to petitioner's request. Both were prepared by petitioner and merely approved by the Probate Court. In particular, both state the following: ORDERED AND ADJUDGED: 1. The trusts in favor of Marris G. Reitmeister and Ida Greenstein established by the Last Will and Testament of Louis A. Reitmeister, deceased, be and are hereby reformed to have them conform to the requirements of the 1969 Tax Reform Act as they pertain to Charitable Remainder Annuity Trusts * * *. [Emphasis added.] In view of the evidence presented, we find that the Probate Court was not interpreting the meaning of ambiguous terms of the will as petitioner claims, [7] but rather was reforming those terms in an attempt to bring the testamentary trusts within the purview of section 2055(e)(2)(A). [8] *573 Section 2055(e)(3)[9] *574 *575 provides that certain trusts not otherwise qualifying under section 2055(e)(2)(A) may be reformed to so qualify. This section was specifically enacted by Congress to alleviate the hardships that the changes made by the TRA could cause in the case of charitable gifts planned and made under prior law. There is no dispute that the testamentary trusts, as reformed, would qualify as charitable remainder annuity trusts. However, section 2055(e)(3) "was not intended to authorize post-death amendments where the remainder interest would not have qualified as a charitable deduction had section 2055 (e)(2)(A) not been enacted." Estate of Humbert v. Commissioner,70 T.C. 542, 549 (1978). Therefore, unless the remainder interests bequeathed to the foundation qualified for deduction at the time of decedent's death under pre-1969 law, such interests were "not rendered deductible by the post-death amendments." Estate of Humbert v. Commissioner,supra at 551. [10] *576 In order to qualify for deduction under pre-1969 law, section 20.2055-2(a), Estate Tax Regs., requires that the charitable remainder interest of a split interest trust have a value that is presently ascertainable and is thus severable from the noncharitable interest. The charitable remainder interests herein are considered "presently ascertainable" if the testamentary trusts prescribed an ascertainable standard for invasion of the trust corpus on behalf of the non-charitable beneficiaries. Estate of Humbert v. Commissioner, supra at 551. [11]
The Supreme Court has held that a trust instrument that allows invasion of the corpus to the extent necessary to maintain the lifetime beneficiary in her current standard of living is an ascertainable standard. Ithaca Trust Co. v. United States,279 U.S. 151 (1929). However, *577 where the purposes for which payment from the trust corpus to a life beneficiary might be required do not lend themselves to reliable prediction, no ascertainable standard exists. Merchant's Nat. Bank of Boston v. Commissioner,320 U.S. 256 (1943) (no ascertainable standard found where the corpus could be invaded for the lifetime beneficiary's "happiness"). In the case of DeCastro's Estate v. Commissioner,155 F.2d 254, 255 (2d Cir. 1946), affg. a Memorandum Opinion of this Court, the will provided for the invasion of the corpus of two testamentary trusts for the benefit of the lifetime beneficiary when "due to [the beneficiary's] illness, accident or other unforeseen emergency, the income * * * shall not be sufficient to amply provide for her needs." The court held that invasion of the corpus to provide for the "illness, accident or other unforeseen emergency" was not an ascertainable standard. Further, the court noted that once the trustee invaded the corpus, it was entirely in his discretion as to what amounts would amply provide for the beneficiary's needs, and therefore there was no standard to measure the amounts which might be withdrawn. DeCastro's Estate v. Commissioner,supra at 255-256. *578 Similarly, in the case before us the decedent's will provided that if the income from the testamentary trusts were "not sufficient to meet the unusual or other unforeseen circumstances and expenses or extraordinary needs and expenses arising out of an emergency due to illness or other unforeseen circumstances" (emphasis added) of either Ida or Morris, the executor(s) could take from the corpus as much as was deemed "suitable and wise" in their "uncontrollable discretion." As sympathetic as we are with the generous impulse that prompted the decedent in making a charitable bequest of the remainder interests of the two testamentary trusts herein, we are convinced that at the time of the decedent's death, the will did not provide an ascertainable standard for invasion of the corpus. Whether "an unusual" or "unforeseen circumstance" occurs is left to the vagaries of life, and clearly the purposes for which payment from trust corpus to either Ida or Morris might be required do not lend themselves to reliable prediction. Merchants Nat. Bank of Boston v. Commissioner,320 U.S. 256 (1943). This is not a "standard * * * fixed in fact and capable of being stated in definite terms of money," *579 cf. Ithaca Trust Co. v. United States,supra at 154. Indeed, unlike the standard provided for in Ithaca Trust Co., which allowed invasion of the corpus to maintain the beneficiary at her prior standard of living, the standard herein provided for invasion of the corpus upon the occurrence of future events which by their nature could not be predicted or accounted for until such occurrence. Further, if the corpus of the trusts herein were invaded, no standard existed by which to measure the amounts that might ultimately be taken since the executor(s) had in this regard "uncontrolled discretion." Cr. Ithaca Trust Co. v. United States,supra; United States v. Leonhardt, an unreported case ( M.D.Fla. 1976, 37 AFTR 2d 1589; 76-1 USTC par. 13138). Since, under the terms of decedent's will, the values of the remainder interests in the trusts established for the benefit of Ida and Morris were not readily ascertainable at the time of decedent's death and thus did not qualify as charitable deductions under pre-1969 law, section 2055(e)(3) cannot be availed of to reform the will after decedent's death to make it conform to the requirements of section 2055(e)(2). And since the will admitted to *580 probate did not meet the requirements of section 2055(e)(2), no amounts are allowable as charitable deductions for the remainder interests in the trusts established for the benefit of Ida and Morris. Consequently, we hold for respondent on this issue. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of the decedent's death. Sec. 2055(a)↩ provides a deduction for transfers for public, charitable, and religious uses.
2. The underscored words indicate the changes made to the trust provisions of the decedent's will.↩
3. SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES. (a) In General.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers-- (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office;
4. Sec. 2055(e). Disallowance of Deduction in Certain Cases.-- (2) Where an interest in property (other than an interest described in section 170(f)(3)(B)) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless-- (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664↩) or a pooled income fund (described in subsection (a) * * * 5. Sec. 664(d)(1)(A)↩ provides generally that a "charitable remainder annuity trust" is a trust from which a sum certain, which is not less than 5 percent of the initial net fair market value of all property placed in trust, is to be paid at least annually for a term of years or for the life of the individual to whom paid.
6. On brief petitioner also asserted that the will itself effectively negated the Thirty-second clause. He maintained that if by virtue of that clause, the fullest amount possible would not be transferred to the foundation, then the Thirty-fifth clause would render that clause invalid and ineffective. We disagree. The Thirty-fifth clause merely provides that if any provisions of the trusts fail, no other provision of the will shall be invalidated or impaired because of such failure. No provision of the trusts have failed here; the lifetime beneficiaries are receiving the trust income, and at their deaths, the remainder interest presumably will pass to the foundation.↩
7. Even had the Probate Court so construed the testamentary trusts to be in conformance with the requirements of section 2055(e)(2)(A), which we do not believe it did, such a decision by a State trial court on Federal tax law would not be binding upon us. Commissioner v. Estate of Bosch,387 U.S. 456↩ (1967). 8. On brief, respondent pointed out that pursuant to Florida law an action brought to construe a will is considered an adversary proceeding wherein the moving party is required to give formal notice to all interested parties. Rule 5.025, Florida Rules of Probate and Guardianship (1976). Generally speaking, an "interested person" is any person who may reasonably be expected to be affected by the outcome of the particular proceeding. Fla. Ann. Stat. 731.201 (12) (1975). "Formal Notice" requires that the petitioner to a proceeding serve a copy of the petition to any interested person or his attorney. Fla. Ann. Stat. 731-301(1) (1975). Petitioner herein has presented no evidence of having ever given a formal notice of a proceeding to construe the will of the decedent to either the life beneficiaries or the remainder beneficiary of the trusts.
9. Sec. 2055(e)(3). In the case of a will executed before December 31, 1977, or a trust created before such date, if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a person, or for a use, described in subsection (a), to meet the requirements of subparagraph (A) or (B) of paragraph (2) of this subsection, and if the governing instrument is amended or conformed on or before December 31, 1978, or, if later, on or before the 30th day after the date on which judicial proceedings begun on or before December 31, 1978 (which are required to amend or conform the governing instrument), become final, so that the interest is in a trust which meets the requirements of such subparagraph (A) or (B) (as the case may be), a deduction shall nevertheless be allowed. * * * [We note that the Act of Oct. 4, 1976, Pub.L. 94-455, sec. 1304(a)-(c), 90 Stat. 1715 (as amended by Pub.L. 95-30, sec. 309(b)(2), 91 Stat. 154, substituted "December 31, 1977," for "September 21, 1974" and "December 31, 1975" where each previously appeared in sec. 2055(e)(3). Subsequently, the Act of Nov. 6, 1978, pub.L. 95-600, sec. 514(a), 92 Stat. 2883, amended sec. 2055 (e)(3) by substituting "December 31, 1978," for "December 31, 1977," in the second and third place such date appeared.]
10. Estate of Humbert v. Commissioner,70 T.C. 542 (1978), is a case that is on "all fours" with this case except for the "invasion" language in the two wills. In the opinion in that case, Judge Featherston carefully reviewed the legislative history of sec. 2055(e)(3) in reaching the conclusions quoted above. We think that case is controlling on that issue and there is no need for us to again review the purpose and legislative history of sec. 2055(e)(3) to reach the same conclusion.
11. In addition to the "presently ascertainable" requirement, sec. 20.2055-2(b)(1)↩ requires that "no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligable." Because we hold that the former requirement has not been met, we need not determine whether the latter has been met.